# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **RICKEY TOM TOWNSEND,** ) | |
| ) | |
| Plaintiff, ) | Case No. 6:12-cv-00261-SI |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Kathryn Tassinari and Drew L. Johnson, Drew L. Johnson, PC, 1700 Valley River Drive, Eugene, OR 97401.  Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Roberta G. Bowie, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202.  Attorneys for Defendant.

**SIMON, District Judge**.

Rickey Tom Townsend seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income disability benefits ("SSI"). Because the Commissioner's decision was supported by substantial evidence, the decision is AFFIRMED.

## I.    BACKGROUND

### A.    The Application

Mr. Townsend is a 54 year-old man with an Associate's degree in Applied Science, whose primary employment has been as a tree sorter. He filed an application for SSI on March 9, 2009, alleging disability due to bad eyesight, bad hearing, osteoarthritis, rheumatoid arthritis, hip pain, back surgeries, knee surgery, head injury, and hip, foot, and arm pain. Tr. 120, 137. The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 89, 95, 98. After an administrative hearing, held on January 25, 2011, the ALJ found Mr. Townsend not to be disabled. Tr. 31. Mr. Townsend's subsequent request for review was denied by the Appeals Council on December 16, 2011, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Mr. Townsend now seeks judicial review of that decision.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011); see also 20 C. F. R. § 416.920; *Bowen v.*

*Yuckert,* 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §

416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
> § 416.920(a)(4)(i). This activity is work involving significant mental or
> physical duties done or intended to be done for pay or profit. 20 C.F.R.
> § 416.910. If the claimant is performing such work, he is not disabled
> within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the
> claimant is not performing substantial gainful activity, the analysis
> proceeds to step two.

> 2.    Is the claimant's impairment "severe" under the Commissioner's
> regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in
> death, an impairment is "severe" if it significantly limits the claimant's
> physical or mental ability to do basic work activities. 20 C.F.R. §
> 416.921(a). This impairment must have lasted or must be expected to last
> for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the
> claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
> § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
> proceeds to step three.

> 3.    Does the claimant's severe impairment "meet or equal" one or
> more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix
> 1?  If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If
> the impairment does not meet or equal one or more of the listed
> impairments, the analysis proceeds beyond step three. At that point, the
> ALJ must evaluate medical and other relevant evidence to assess and
> determine the claimant's "residual functional capacity" ("RFC"). This is
> an assessment of work-related activities that the claimant may still
> perform on a regular and continuing basis, despite any limitations imposed
> by his or her impairments. 20 C.F.R. § 416.920(e). After the ALJ
> determines the claimant's RFC, the analysis proceeds to step four.

> 4.    Can the claimant perform his or her "past relevant work" with this
> RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.
> § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past
> relevant work, the analysis proceeds to step five.

> 5.    Considering the claimant's RFC and age, education, and work
> experience, is the claimant able to make an adjustment to other work that
> exists in significant numbers in the national economy? If so, then the
> claimant is not disabled. § 404.1520(a)(4)(v); 404.1560(c). If the claimant
> cannot perform such work, he or she is disabled. *Id.*

The claimant bears the burden of proof at steps one through four. *Id*. at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id*.; see also 20 C.F.R. § 416.966 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d

at 1099.

**C.    The ALJ's Decision**

The ALJ performed the sequential analysis.  At step one, he found that Mr. Townsend

had not engaged in substantial gainful activity since March 6, 2009.  Tr. 24.  At step two, the

ALJ found that Mr. Townsend had the following severe impairments: degenerative disc disease

of the lumbar spine, status post lumbar spine discectomy surgeries, status post left knee surgery,

obesity, and dysthymia.  *Id*.  At step three, the ALJ found that Mr. Townsend did not have an

impairment or combination of impairments that met or medically equaled a listed impairment.

Tr. 25.

The ALJ next assessed Mr. Townsend's residual functional capacity ("RFC") and determined

that Mr. Townsend could perform less than the full range of work at the medium level. Tr. 26.

At step four, the ALJ found that Mr. Townsend had no past relevant work.  Tr. 30.  At step five,

based on the testimony of a vocational expert ("VE"), the ALJ found that Mr. Townsend could

perform jobs that exist in significant numbers in the national economy, including hand packager, small products assembler, and packing line worker.  Tr. 30-31.  Accordingly, the ALJ concluded that Mr. Townsend was not disabled.  *Id.*

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.    DISCUSSION

Mr. Townsend argues that the ALJ erred by: (1) improperly rejecting the opinion of a treating physician, Dr. Forrester; (2) improperly rejecting Mr. Townsend's subjective symptom testimony; and (3) failing to meet the ALJ's burden, at step five, of proving that Mr. Townsend retains the ability to perform "other work" in the national economy.  Pl. Br. 17.  The Court finds that the ALJ erred by failing to consider Dr. Forrester's opinion that Mr. Townsend has osteoarthritis in his hands.  The Court also finds that the ALJ erred to the extent that he discredited Mr. Townsend's testimony based on evidence of secondary gain and lack of recent medical records.  For the reasons set forth below, however, these errors were harmless.  The ALJ's decision is, therefore, affirmed.

### A.    Medical Opinion Evidence

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In addition, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a non-examining physician.  *Lester*, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*

*v. Sullivan*, 908 F.2d 502 at 506 (9th Cir. 1990).  If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester,* 81 F.3d at 830.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).  As discussed above, an ALJ must provide "specific, legitimate reasons" for discrediting the controverted opinion of a treating or examining physician.  *Lester,* 81 F.3d at 830.  Specific, legitimate reasons for rejecting an opinion of a treating physician include inconsistency with a claimant's testimony.  *Andrews*, 53 F.3d at 1043 (9th Cir. 1995).  It is legal error to ignore a treating physician's medical opinion without providing reasons for doing so.  *Weaver v. Chater*, 67 F.3d 310, at *1 (9th Cir. 1995) (unpublished) ("The ALJ appeared to simply ignore the medical opinions of the treating and examining physicians ….  He gave no reason for doing so; he simply did it. That is a legal error").

Dr. Forrester began treating Mr. Townsend in 2004.  Tr. 255.  He diagnosed Mr. Townsend with major depression and with insomnia, osteoarthritis of the hands, degenerative disc disease of the lumbar spine with discectomy, and torn cartilage of the left knee.  Tr. 242, 259.  Dr. Forrester opined in a letter that "it is very difficult for Mr. Townsend to perform physical labor" due to his lower back pain.  Tr. 255.  Dr. Forester also found that Mr. Townsend had osteoarthritis in his hands.  Although the ALJ provided legally sufficient reasons to reject Dr. Forrester's opinion that Mr. Townsend would have difficulty performing physical labor, the ALJ erred because he did not discuss Dr. Forrester's diagnosis of osteoarthritis in Mr. Townsend's hands.  For reasons set forth below, however, that error was harmless.

Mr. Townsend argues that the ALJ failed properly to credit Dr. Forrester's opinion that "it is very difficult for Mr. Townsend to perform physical labor." Tr. 255. The ALJ gave little weight to Dr. Forrester's opinion, and credited more recent assessments of Mr. Townsend that found him to be "more functional." Tr. 29. Because the more recent assessments controverted Dr. Forrester's opinion of his ability to perform physical labor, the ALJ was only required to provide specific, legitimate reasons for rejecting his opinion. *Lester*, 81 F.3d at 830.[1]

The ALJ credited the opinion of examining physician Dr. Todd Lewis, who found in 2009 that Mr. Townsend had only "some restrictions" related to prior back surgeries. Tr. 180. The ALJ pointed out that Dr. Forrester's opinion was based on an assessment that preceded Dr. Lewis's controverting opinion by several years. Tr. 29. The most recent medical reports from a physician are highly probative. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ also considered the opinions of the state agency physicians. Dr. Sharon Eder reviewed the objective medical evidence and found that Mr. Townsend was capable of medium work with postural limitations. Tr. 29, 186-193. Dr. Eder's findings were confirmed by another state evaluator, Dr. Martin Kehrli. Tr. 29, 221. The ALJ assigned significant weight to the state assessments. Tr. 30.

The ALJ provided a specific, legitimate reason for rejecting Dr. Forrester's opinion. Mr. Townsend reported in January 2005 that he could lift up to fifty pounds, which indicated that he could perform some physical labor without difficulty. Tr. 258. Mr. Townsend argues that

---

[1] The ALJ also rejected Dr. Forrester's opinion because it was not based on objective testing. Mr. Townsend argues that, contrary to this assertion, Dr. Forrester's records show that he reviewed an x-ray and other objective evidence of a positive straight leg raise and deformities in both hands. Pl. B. 14; Tr. 257, 259. Because the ALJ provided a legally sufficient reason to reject Dr. Forrester's opinion, however, the Court need not consider this argument. *See Carmickle*, 533 F.3d at 1162 (a single erroneous basis for an ALJ's determination is harmless error if valid reasons supporting that determination remain).

this statement predated a later "exacerbation" of his condition, yet he appeared to make the same claim in a 2009 Function Report. Tr. 152. Inconsistency with Mr. Townsend's own statements is a specific, legitimate reason for rejecting Dr. Forrester's opinion. *Andrews*, 53 F.3d at 1043 (ALJ's rejection of examining doctor's opinion was supported by specific, legitimate reasons including inconsistency with claimant's own testimony). The ALJ thus provided a specific, legitimate reason supported by substantial evidence in the record for rejecting Dr. Forrester's opinion.

Mr. Townsend next argues that the ALJ improperly failed to address Dr. Forrester's diagnosis of his osteoarthritis. Pl. B. 17. In 2004, Dr. Forrester diagnosed Mr. Townsend with osteoarthritis. Tr. 259. Dr. Forrester's treatment notes document deformities of the interphalangeal joints in both of Mr. Townsend's hands and in most of most of his fingers, consistent with arthritis. *Id.* Dr. Forrester did not, however, assess any attendant manipulative limitations in Mr. Townsend's hands. *Id.* The ALJ did not directly address Dr. Forrester's diagnosis of osteoarthritis. Tr. 28.

Although Dr. Forrester's opinion was contradicted by Dr. Lewis's assessment, failure to address Dr. Forrester's diagnosis of osteoarthritis was error. *Orn*, 495 F.3d at 632 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record") (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

Nevertheless, an error is harmless if the omitted testimony did not alter the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Dr. Forrester did not identify any functional manipulative limitations attendant to Mr. Townsend's hand condition Tr. 259. The record does not reveal any limitations due to

Mr. Townsend's hand condition. In fact, Dr. Lewis opined that Mr. Townsend had "fullness without deformity in the index and middle MCP joints of both hands." Tr. 177. Dr. Lewis found 15 degree flexion deformities in both of Mr. Townsend's little fingers, but did not diagnose osteoarthritis or assess any manipulative limitations. Tr. 178, 180. Thus, Dr. Lewis's assessment contradicts Dr. Forrester's opinion regarding Mr. Townsend's hand condition. *See, e.g.*, Tr. 152. Thus, the RFC properly included all functional limitations supported by substantial evidence in the record. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an RFC restricting the claimant to performance of "simple tasks" properly incorporated all limitations related to pace and other mental limitations regarding attention, concentration, and adaption). The ALJ's failure to address Dr. Forrester's diagnosis of Mr. Townsend's hand condition was, therefore, harmless error.

In sum, the ALJ provided a specific and legitimate reason for rejecting Dr. Forrester's opinion that it would be very difficult for Mr. Townsend to performing physical labor. Although the ALJ erred in omitting Dr. Forrester's diagnosis of osteoarthritis, that error was harmless because no evidence showed that Mr. Townsend's osteoarthritis affected his functioning.

**B.      Mr. Townsend's Testimony**

Mr. Townsend argues that the ALJ failed to provide clear and convincing reasons for finding him not credible. Pl. B. 14-17. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need

not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Coleman v. Astue*, 423 Fed. Appx. 754, 756 (9th Cir. 2011) (although court found error in one credibility finding, substantial evidence remained to support the ALJ's conclusions on credibility, including claimant's failure to follow repeated medical recommendations that she treat her pain with exercise and increased activity levels).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, available at 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Mr. Townsend challenges the following reasons that the ALJ provided for rejecting Mr. Townsend's testimony: (1) noncompliance with treatment; (2) lack of current treatment records or updated imaging; (3) "secondary gain" issues; (4) evidence of drug-seeking behavior; (5) inconsistency with daily activities; (6) inconsistency with medical evidence.  As discussed below, because noncompliance with treatment and inconsistency with daily activities are both "clear and convincing" reasons, the ALJ had a sufficient basis for rejecting Mr. Townsend's testimony, even if the ALJ's other reasons are not supported by the record.

### 1.    Noncompliance with Treatment

There was adequate evidence in the record, noted by the ALJ, that Mr. Townsend repeatedly missed medical appointments. *See, e.g.,* Tr. 257.  Indeed, Mr. Townsend was "dropped" from a doctor's practice for missing too many appointments.  Tr. 27, 183, 234; *see*

*Tommassetti*, 533 F.3d at 1039 (an ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Although Mr. Townsend argues that the ALJ did not properly develop this issue, the Court disagrees. As the Ninth Circuit made clear in *Fair v. Bowen*, it is the claimant's burden adequately to explain his failure to follow a prescribed course of treatment. 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of his testimony); *see also Smolen*, 80 F.3d at 1293. Mr. Townsend did not offer an explanation for missing his appointments. The record supports the ALJ's findings that Mr. Townsend failed to attend several treatment appointments. Mr. Townsend's noncompliance with his medical appointments is a legally acceptable reason to discount his credibility.

  **2.**  **Lack of Current Records and Failure to Seek Treatment**

  The ALJ points out that the record contains "little evidence of current treatment records or updated imaging related to the claimant's severe impairments" and that Mr. Townsend failed to seek regular, consistent treatment. Tr. 28. Mr. Townsend testified that he had not been able to see a doctor for several years due to a lack of funds and health insurance. Tr. 54. In Mr. Townsend's financial situation, failure to produce current treatment records, which can only be obtained through medical treatment, cannot support an adverse credibility finding. *Orn*, 495 F.3d at 638 (evidence of "gaps" in medical treatment was not a legitimate reason for rejecting claimant's testimony when claimant explained in his testimony that he would have liked to have seen his doctors more often, but was unable to do so because he "can't afford it"). Although the Commissioner argues that Mr. Townsend's use of marijuana, tobacco, and alcohol indicate that he had some resources, the ALJ did not reference this evidence in his opinion. A court may only

affirm an ALJ's decision on the grounds originally offered by the agency.  *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009).  The lack of current treatment records thus does not support the ALJ's adverse credibility finding.

### 3.    Secondary Gain Issues

Mr. Townsend argues that the ALJ's credibility finding inappropriately relied upon secondary gain as a reason for finding him not credible.  Pl.'s Br. 16.  "Secondary gain" refers to a significant psychological motivation that a patient may have for reporting symptoms.  The ALJ stated secondary gain issues "may also be present" as grounds for doubting Mr. Townsend's credibility, reasoning that he had no source of income, used food stamps, and used financial assistance to pay his electricity bill.  Tr. 28, 52.  The ALJ then inferred from Mr. Townsend's financial condition that he could be exaggerating his symptoms and limitations in order to increase his chance of obtaining benefits.  Tr. 28.

It is, however, impermissible to use Mr. Townsend's financial distress as a reason to doubt his credibility.  *Edgar v. Astrue,* No. 08-6379-AC, 2010 WL 2730927, at *5 (D. Or. June 2, 2010) ("The ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning circumvents the very purpose of disability benefit applications").  Thus, the ALJ's treatment of "secondary gain" issues does not support his credibility finding.

### 4.    Drug-Seeking Behavior

The ALJ found that the record contained evidence of drug-seeking behavior by Mr. Townsend.  Tr. 28, 256.  In 2011, Mr. Townsend requested an early refill of Vicodin, a narcotic pain relief medication.  Mr. Townsend stated that he had diverted his prescribed pain medication to "some friends."  Tr. 256.  Mr. Townsend challenges this finding, but provides no

legal authority for the proposition that evidence of drug-seeking behavior is not a clear and convincing reason for doubting Mr. Townsend's credibility.  Pl. Br. 16.

The ALJ is entitled to rely on "ordinary techniques of credibility evaluation." *Tommasetti*, 533 F.3d at 1039.  It was reasonable to infer from the fact that Mr. Townsend could afford to give away some of his prescribed pain medication – behavior described by Dr. Forrester as "serious," "illegal," and "dangerous" – that Mr. Townsend was not in as much pain as alleged. Tr. 256; *see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ may "draw inferences logically flowing from the evidence").  This evidence supports the ALJ's credibility finding.

### 5.    Daily Activities

Mr. Townsend also challenges the ALJ's finding that his daily activities were inconsistent with his testimony about the nature and severity of his condition.  Tr. 28.  The ALJ found that Mr. Townsend could perform a full range of activities based on his testimony, including walking up to a mile, riding a bicycle, exercising three times a week, lifting up to fifty pounds, shopping for groceries, and visiting with neighbors.  Tr. 52-53, 152, 183, 258.  The ALJ found these activities to be inconsistent with the "nature, severity and subjective complaints of the claimant."  Tr. 28.

Mr. Townsend contends that his daily activities that the ALJ cited are not inconsistent with Mr. Townsend's allegations of impairment.[2]  Pl. Br. 17.  The Court disagrees. Mr. Townsend alleged that he suffers from back and knee pain that cause him disabling

---

[2] Mr. Townsend also suggests that he only "thought" himself capable of lifting fifty pounds.  Pl. Br. 17.  The suggestion that Mr. Townsend erroneously reported on his own abilities supports, and does not detract from, the ALJ's skepticism about Mr. Townsend's credibility.  Moreover, Mr. Townsend indicated in his 2009 Function Report that he did not have any problems lifting up to fifty pounds.  Tr. 152.

limitations.  The ALJ reasonably concluded that activities like riding a bike, exercising regularly, and shopping for groceries are inconsistent with the degree of knee and back pain that Mr. Townsend alleges.  Mr. Townsend also stated that he has trouble sitting.  The ALJ properly found that riding a bicycle, which involves sitting, is inconsistent with this testimony. Tr. 28. These facts constitute "relevant evidence [that] a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Andrews*, 53 F.3d at 1039.  Thus, even if Mr. Townsend offers an alternative rational interpretation of the evidence, the Court must uphold the ALJ's decision. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The evidence supports the ALJ's finding.

### 6.    Consistency with Medical Evidence

Finally, Mr. Townsend argues that the ALJ erred in finding that Mr. Townsend's subjective complaints were not consistent with the medical record.  The Court disagrees.  The ALJ pointed out several inconsistencies in the medical record that supported the ALJ's adverse credibility finding.  The ALJ properly concluded that Mr. Townsend's subjective complaints about both his mental and physical limitations were not reasonably consistent with the medical evidence, and this supported the ALJ's adverse credibility finding.  Tr. 27.

### i.    Mental Limitations

Mr. Townsend testified that his memory is "fair" and that his back pain interferes with his ability to concentrate.  Tr. 70-71.  Medical evidence in the record contradicted this testimony. First, examining physician Dr. Lewis opined that Mr. Townsend had normal mood and affect and that he was not taking medications despite pain complaints.  Tr. 176.  Dr. Lewis also opined that Mr. Townsend's complaints were not supported by the objective medical evidence.  Tr. 180.

The ALJ assigned "significant weight" to Dr. Lewis' assessment, finding that it was an "objective examination" and consistent with the record.  Tr. 29.

Second, Dr. Frank Lanham evaluated Mr. Townsend on May 28, 2009, and he opined that Mr. Townsend's cognitive function was within the normal limits, with strong abstract reasoning skills.  Tr. 181-184.  The ALJ also noted that Dr. Lanham suspected Mr. Townsend of using more alcohol and marijuana than he reported.  Tr. 29, 184.[3]

In sum, there was ample evidence in the medical record that contradicted Mr. Townsend's testimony about his mental limitations and the ALJ's finding to that effect was not error.

### ii.    Physical Limitations

Mr. Townsend testified that he could not work at all due to pain in his back and hips. Tr. 54.  Medical evidence in the record, however, contradicted this testimony. Treating physician Rick Wopat opined that any stenosis in Mr. Townsend's spine was "not enough to meet the guidelines for imaging."  Tr. 271.  This contradicts Mr. Townsend's testimony regarding the severity of his physical limitations.  Although inconsistency with the medical evidence is not by itself a clear and convincing reason, the ALJ properly discredited Mr. Townsend's testimony based on medical evidence in the record that conflicted with his testimony, along with the clear and convincing reasons discussed above.

---

[3] The medical record also contained evidence that Mr. Townsend denied depression symptoms. Tr. 268.  Mr. Townsend argues that his denial of depression symptoms in February, 2011, is not inconsistent with "other significant mental problems, including memory loss and anxiety."  Pl. Br. 15.  While Mr. Townsend's interpretation of the evidence may be reasonable, the ALJ also offered a reasonable interpretation of the evidence.  *See Magallanes*, 881 F.2d at 750 ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  The Court must therefore uphold his decision.

In sum, the ALJ properly cited drug-seeking behavior, inconsistency with daily activities, and inconsistency with objective medical evidence as reasons for rejecting Mr. Townsend's testimony on the nature and severity of his symptoms. The ALJ provided adequate clear and convincing reasons to discredit Mr. Townsend's testimony.

**C.    The ALJ's Step Five Findings**

Mr. Townsend also argues that the ALJ erred at step five, where the ALJ determined that the claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ may draw upon a VE's testimony. 20 C.F.R. § 416.966(d-e). The ALJ's hypothetical to the VE, however, must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Mr. Townsend argues that the ALJ erred because the hypothetical given to the VE omitted: (1) the ALJ's findings regarding Mr. Townsend's limitations; (2) Mr. Townsend's testimony about his limitations; and (3) Dr. Forrester's opinion. Because the Court affirms the ALJ's treatment of Mr. Townsend's testimony and has found that the ALJ's error in failing to discuss Dr. Forrester's opinion was harmless, neither of these two issues provides a ground for reversal.

With regard to the ALJ's finding that Mr. Townsend had moderate limitations in social functioning and concentration, the ALJ did not expressly include these limitations in his RFC. Mr. Townsend argues that this was error. The Court disagrees. Although an ALJ may not ignore limitations found to be supported by the record, *March v. Comm'r*, 462 Fed. App. 671, 673 (9th Cir. 2011), the ALJ here properly captured Mr. Townsend's deficiency in pace and other mental limitations in the RFC assessment by limiting Mr. Townsend to the performance of "simple, repetitive tasks." Tr. 26; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1171-74 (RFC

assessment limiting claimant to "simple, routine, repetitive . . . work" properly "capture[d her] deficiency in pace and other mental limitations").

In *Stubbs-Danielson*, the Ninth Circuit upheld an ALJ's opinion denying benefits to a claimant with moderate limitations in pace and mild limitations in "several other mental functioning areas." *Stubbs-Danielson*, 539 F.3d at 1173. Despite these limitations, the claimant was able to "carry out simple tasks," as evidenced by her ability to perform daily activities like shopping, cooking, and reading. *Stubbs-Danielson,* 539 F.3d at 1173-74. Here, while the ALJ found that Mr. Townsend had moderate limitations in social functioning and in concentration, persistence, and pace, he also credited evidence that Mr. Townsend performed daily activities that included shopping and riding a bike. Tr. 26. The ALJ also credited the medical opinions of Dr. Lewis and the State agency physicians that Mr. Townsend had only "some restrictions." Tr. 180. Mr. Townsend's daily activities and level of functioning are consistent with the ability to perform simple, repetitive tasks. *See Stubbs-Danielson,* 539 F.3d at 1173-74. Thus, the ALJ did not err at step five.

## IV.    CONCLUSION

The ALJ provided legally sufficient reasons for rejecting Dr. Forrester's opinion and discrediting Mr. Townsend's testimony. Although the ALJ erred by failing to consider Mr. Townsend's osteoarthritis, that error was harmless. Thus, the decision that Mr. Townsend is not disabled is supported by substantial evidence in the record and is AFFIRMED.

DATED this 25th day of February, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge